# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SCHUMAKER, individually and on behalf of other members of the general public similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>PARKER-HANNIFIN CORPORATION, an Ohio corporation; and DOES 1 through 100, inclusive,<br><br>　　　　　　　　　　　　Defendants. | Case No.:  26-cv-02940-H-BJW<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>[Doc. No. 12.] |

On June 5, 2026, Plaintiff James Schumaker filed a motion to remand the action back to state court.  (Doc. No. 12.)  On June 29, 2026, Defendant Parker-Hannifin Corporation filed a response in opposition to Plaintiff's motion to remand.  (Doc. No. 13.)  On July 7, 2026, Plaintiff filed a reply.  (Doc. No. 18.)

A hearing on Plaintiff's motion to remand is currently scheduled for Monday, July 13, 2026 at 10:30 a.m.  The Court, pursuant to its discretion under Civil Local Rule 7.1(d)(1), determines the matter is appropriate for resolution without oral argument, submits the motion on the parties' papers, and vacates the hearing.  For the reasons below, the Court denies Plaintiff's motion to remand.

///

**<u>Background</u>**

The following factual background is taken from the allegations in Plaintiff's complaint.  Defendant employed Plaintiff as an hourly-paid non-exempt employee from approximately June 1997 to approximately December 2025 in the County of San Diego, California.  (Doc. No. 1-2, Compl. ¶ 18.)  Plaintiff alleges that, during the relevant time period, Defendant engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the State of California.  (<u>Id.</u> ¶ 25.)  Plaintiff further alleges that this pattern and practice involved failing to pay employees for all regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of California law along with other violations.  (<u>Id.</u>)

On April 2, 2026, Plaintiff filed a wage and hour class action complaint against Defendant in the Superior Court of California, County of San Diego, alleging ten causes of action for: (1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (3) violation of California Labor Code § 226.7 (unpaid rest period premiums); (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (5) violation of California Labor Code §§ 201 and 202 (final wages not timely paid); (6) violation of California Labor Code § 204 (wages not timely paid during employment); (7) violation of California Labor Code § 226(a) (non-compliant wage statements); (8) violation of California Labor Code § 1174(d) (failure to keep requisite payroll records); (9) violation of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses); and (10) violation of California's Unfair Competition Law, California Business & Professions Code § 17200, et seq.  (Doc. No. 1-2, Compl. ¶¶ 49–119.)  On May 8, 2026, Defendant removed the action from state court to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).  (Doc. No. 1, Notice of Removal.)

By the present motion, Plaintiff moves to remand the action back to state court on the basis of lack of subject matter jurisdiction.  (Doc. No. 12.)  Specifically, Plaintiff

26-cv-02940-H-BJW

contends that the Court lacks diversity jurisdiction over the action because Defendant has failed to demonstrate that the amount in controversy requirement has been satisfied here. (Id.)

**Discussion**

**I.    Legal Standards**

"A defendant generally may remove a civil action if a federal district court would have original jurisdiction over the action." Allen v. Boeing Co., 784 F.3d 625, 628 (9th Cir. 2015) (citing 28 U.S.C. § 1441(a)); see Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). "Federal courts are courts of limited jurisdiction and, as such, cannot exercise jurisdiction without constitutional and statutory authorization." Hansen v. Grp. Health Coop., 902 F.3d 1051, 1056 (9th Cir. 2018). There is a strong presumption against removal jurisdiction, and courts strictly construe the removal statute against removal jurisdiction. See Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010). "The removing defendant bears the burden of overcoming the 'strong presumption against removal jurisdiction.'" Hansen, 902 F.3d at 1057; see also Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) ("The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists.").

Here, Defendant removed the action to federal court on the basis of diversity question jurisdiction under 28 U.S.C. § 1331(a). (Doc. No. 1, Notice of Removal ¶¶ 10–77.) "Traditional diversity jurisdiction requires complete diversity of citizenship and an amount in controversy greater than $75,000." Canela v. Costco Wholesale Corp., 971 F.3d 845, 849 (9th Cir. 2020) (citing 28 U.S.C. § 1332(a)). As such, the Court addresses these two requirements for diversity jurisdiction in turn below.

**II.    Complete Diversity of Citizenship**

Complete diversity of citizenship requires "that 'the citizenship of each plaintiff is diverse from the citizenship of each defendant.'" Demarest v. HSBC Bank USA, N.A., 920 F.3d 1223, 1226 (9th Cir. 2019) (quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). A natural person's state citizenship is determined by his state of domicile. Kanter

v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." Id.

The citizenship of a corporation is determined by the state(s) of its incorporation and its principal place of business. 28 U.S.C. § 1332(c)(1) (for purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."). A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities" – normally, its headquarters. Hertz Corp. v. Friend, 559 U.S. 77, 92–93 (2010).

In the complaint, Plaintiff alleges that he is an individual residing in the State of California. (Doc. No. 1-2, Compl. ¶ 5.) In addition, Defendant has provided the Court with evidence showing that Plaintiff has had a home address in California through the duration of his 28 years of employment with Defendant. (Doc. No. 1-3, Tandon Decl. ¶ 8.) This is sufficient to demonstrate that Plaintiff is a California citizen for diversity purposes. See Kanter, 265 F.3d at 857.

Defendant has also provided the Court with evidence showing that it is an Ohio corporation with its principal place of business ("headquarters") in Ohio. (Doc. No. 1-3, Tandon Decl. ¶ 4.) Thus, Defendant is an Ohio citizen for diversity purposes. See 28 U.S.C. § 1332(c)(1); Hertz, 559 U.S. at 92–93.

As such, Defendant has demonstrated that the present action satisfies the complete diversity of citizenship requirement for diversity jurisdiction. Indeed, in his motion to remand, Plaintiff does not dispute that the requirement for complete diversity of citizenship is satisfied here. (See generally Doc. No. 12.) The Court now turns to the amount in controversy requirement for diversity jurisdiction.

**III.   Amount in Controversy**

The amount in controversy for an action is simply the amount at stake in the underlying litigation. Jauregui v. Roadrunner Transportation Servs., Inc., 28 F.4th 989,

4

26-cv-02940-H-BJW

994 (9th Cir. 2022).  Importantly, the amount at stake "'does not mean likely or probable liability; rather, it refers to possible liability.'"  Id.  "The amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.'"  Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 416 (9th Cir. 2018) (quoting Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648 (9th Cir. 2016)).

"In determining the amount in controversy, courts first look to the complaint."  Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015).  "Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'"  Id.  But, "[w]here, as here, 'a plaintiff's state court complaint does not specify a particular amount of damages, the removing [party] bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds' the threshold at the time of removal."[1]  Canela v. Costco Wholesale Corp., 971 F.3d 845, 849 (9th Cir. 2020); Chavez, 888 F.3d at 416.

In assessing the amount in controversy, a court "may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy."  Chavez, 888 F.3d at 416.  Under this standard, a defendant can rely on "reasonable assumptions underlying the defendant's theory of damages exposure," but the defendant cannot rely on "mere speculation and conjecture [or] unreasonable assumptions."  Ibarra, 775 F.3d at 1197.

---

[1]    In the complaint, Plaintiff alleges that "[t]he 'amount in controversy' for the named Plaintiff . . . is less than seventy-five thousand dollars ($75,000)."  (Doc. No. 1-2, Compl. ¶ 1.)  Plaintiff contends that this allegation was made in good faith and is therefore controlling.  (Doc. No. 12 at 4.)  Plaintiff is wrong.  A bald assertion in a complaint that the amount in controversy is less than $75,000 is not entitled to controlling weight.  See Emsurgcare v. UnitedHealthcare Ins. Co., 736 F. Supp. 3d 808, 812 (C.D. Cal. 2024); Martinez v. Sunnova Energy Corp., No. 2:24-CV-06346-MRA-MAR, 2025 WL 732350, at *4 (C.D. Cal. Mar. 7, 2025).  Plaintiff's state court complaint does not specify any particular amount of damages.  Therefore, the preponderance of evidence standard applies here.  See Canela, 971 F.3d at 849; Chavez, 888 F.3d at 416.

26-cv-02940-H-BJW

In the notice of removal, Defendant asserts that the amount in controversy for this action is $95,892.13.  (Doc. No. 1, Notice of Removal ¶ 77.)  Defendant reached this total amount for the amount in controversy via the following calculations: (1) $8,295 in overtime violations; (2) $17,000.48 in meal period violations; (3) $17,000.48 in rest period violations; (4) $6,600 in unpaid minimum wages; (5) $7,454.40 for failure to pay all earned wages at time of separation; (6) $12,023.34 for failure to timely pay earned wages penalties; (7) $4,000 for failure to provide wage statement penalties; (8) $500 for failure to keep requisite payroll records penalties; (9) $3,840 in unreimbursed business expenses; and (10) a 25% benchmark in attorney's fees.  (See id. ¶¶ 32–77.)  The Court addresses the relevant calculations in turn below.

A.    Overtime Violations

In the complaint, Plaintiff alleges that Defendant engaged in a pattern and practice of failing to pay "overtime wages owed to Plaintiff and other class members for all overtime hours worked."  (Doc. No. 1-2 Compl. ¶¶ 24–25, 38, 54–55.)  Further, Defendant has produced evidence showing that during the four-year statutory period of March 2, 2022 through December 31, 2025, Plaintiff worked for Defendant for 823 shifts over 200 workweeks/payperiods, at an average of approximately 8.53 hours per shift, and, during this period, Plaintiff's average hourly rate was approximately $27.65.  (Doc. No. 1-3, Tandom Decl. ¶¶ 12–13.)

In the notice of removal, Defendant contends that Plaintiff's allegation of unpaid overtime wages puts at least $8,295 in controversy.  (Doc. No. 1, Notice of Removal ¶ 38.)  Defendant reached this amount via the following calculation (1 hour of unpaid overtime per week x 200 weeks x 27.65 average hourly rate x 1.5 overtime multiplier).  (Doc. No. 13 at 11.)  Defendant defends this calculation by arguing that an assumption of one hour of unpaid overtime per week is reasonable in light of the Plaintiff's allegations.  The Court agrees.  See Gallagher-Stevens v. Indep. Living Sys., LLC, No. 24-CV-04582-WHO, 2025 WL 354630, at *9 (N.D. Cal. Jan. 31, 2025) ("When a plaintiff alleges that a defendant engaged in a policy or practice of failing to properly compensate class members for

26-cv-02940-H-BJW

overtime hours worked . . . courts have found that an assumption of one hour of unpaid overtime per week is reasonable for the purpose of analyzing the amount in controversy under CAFA."); <u>Mendoza v. Savage Servs. Corp.</u>, No. 219CV00122RGKMAA, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) ("[C]ourts in this district have found that a conservative 20% violation rate, or one hour of overtime pay per week, to be reasonable."); <u>see also, e.g.</u>, <u>Watson v. San Diego Dialysis Servs., Inc.</u>, No. 24CV0228-LL-JLB, 2024 WL 4679117, at *4 (S.D. Cal. Nov. 5, 2024). Indeed, in Plaintiff's motion to remand, Plaintiff accepts Defendant's $8,295 overtime calculation in Plaintiff's own counter-calculation for the amount in controversy. (<u>See</u> Doc. No. 12 at 18; Doc. No. 18 at 5, 9.)

Plaintiff contends that Defendant's overtime calculation is improper because Defendant's assumption that one specific hour per week, across all 200 workweeks, went unpaid is unsupported by any payroll record, wage statement analysis, or direct evidence of non-payment for any specific shift. (Doc. No. 12 at 5; Doc. No. 18 at 3–4.) But Defendant's assumption underlying its calculation need not be based on specific evidence showing non-payment for certain shifts. Rather, it can be based on the allegations in Plaintiff's own complaint, <u>see</u> <u>Chavez</u>, 888 F.3d at 416, and Plaintiff's complaint alleges in a general manner that Defendant did not pay for all overtime hours worked. In light of those allegations, an assumption of one unpaid overtime hour per week is reasonable. <u>See</u> <u>Gallagher-Stevens</u>, 2025 WL 354630, at *9; <u>Watson</u>, 2024 WL 4679117, at *4. In sum, Defendant has demonstrated that the amount in controversy with respect to unpaid overtime is $8,295.

B.    <u>Meal Period and Rest Period Violations</u>

In the complaint, Plaintiff alleges that Defendant engaged in a pattern and practice of requiring Plaintiff and the other class members to work during meal and rest periods and failing to compensate them their full meal/rest period premiums for work performed during the meal periods and rest periods. (Doc. No. 1-2, Compl. ¶¶ 24, 28–30, 64–65, 73-74.) In the notice of removal, Defendant calculates $17,000.48 for meal period violations and an additional $17,000.48 for rest period violations. (Doc. No. 1, Notice of Removal ¶¶ 45,

26-cv-02940-H-BJW

50.)  Defendant concedes that these calculations are based on a 100% violation rate.  (See Doc. No. 13 at 12–14.)

Allegations that a Defendant has engaged in a pattern and practice of doing something is insufficient to justify a 100% violation rate.  See Ibarra, 775 F.3d at 1198 ("a 'pattern and practice' of doing something does not necessarily mean always doing something"); Evers v. La-Z-Boy Inc., No. 21CV2100-LL-BLM, 2022 WL 2966301, at *7 (S.D. Cal. July 27, 2022) ("engaging in a 'pattern or practice' does not mean that a violation occurred in a 100% of shifts"); Lindsey v. WC Logistics, Inc., 586 F. Supp. 3d 983, 994 (N.D. Cal. 2022) ("[I]t is unreasonable to assume a 100% violation rate based only on a plaintiff's allegation of a 'pattern and practice' of labor law violations.").  "Further, other district courts routinely assume a 20% violation rate for meal and rest break claims where no evidence as to the frequency of violations is presented."  Evers, 2022 WL 2966301, at *7; see, e.g., Leander v. Accent Controls, Inc., No. 24-CV-01821-GPC-SBC, 2025 WL 301294, at *6 (S.D. Cal. Jan. 27, 2025); Paiz v. Voxelmaps Inc., No. 25-CV-05640-PCP, 2025 WL 2942393, at *3 (N.D. Cal. Oct. 16, 2025).  As such, the Court rejects Defendant's proposed 100% violation rate, and the Court will instead assume a 20% violation rate for the meal and rest period violations.  As a result, Defendant has only demonstrated $3,400.10 as the amount in controversy with respect to meal period violations and $3,400.10 as the amount in controversy with respect to rest period violations.

### C.    California Labor Code § 210 Penalties

In the complaint, Plaintiff alleges that Defendant violated California Labor Code § 204 by failing to pay Plaintiff and other class members all wages due to them within the permissible time period.  (Doc. No. 1-2, Compl. ¶¶ 43, 93–94.)  "[California] Labor Code § 210 provides that any employer who fails to timely pay wages in violation of the Labor Code's provisions must pay a penalty of $100 for the initial violation, plus $200 for each subsequent violation, plus 25 percent of the amount unlawfully withheld for each subsequent violation."  Leander, 2025 WL 301294, at *7.  Based on Plaintiff's allegations, in the notice of removal, Defendant calculates $12,023.34 as the amount in controversy

26-cv-02940-H-BJW

with respect to § 210 violations. (Doc. No. 1, Notice of Removal ¶ 63.) Defendant breaks down this calculation as follows: (1) $100 for the initial violation penalty; (2) $8,600 in subsequent violation penalties; and (3) $3,323.34 for 25% of the unlawfully withheld wages. (Id.)

Plaintiff argues that Defendant's § 210 penalties calculation should be rejected because it is based on Defendant's assumption that a violation occurred in every one of Plaintiff's 44 consecutive pay periods over a full year (a 100% violation rate). (Doc. No. 12 at 13.) The Court disagrees. In the preceding sections, the Court explained that it is reasonable for Defendant to assume one unpaid hour of overtime per week, and it is reasonable for Defendant to assume one meal and one rest break violation per week (a 20% violation rate). See supra Order, Sections IIIA, B. In this situation, it is reasonable to assume a 100% violation rate for the purposes of calculating the amount in controversy for § 210 penalties because, under the prior assumptions accepted by the Court, a failure to timely pay wages violation occurred every week. See, e.g., Leander, 2025 WL 301294, at *7 ("The Court has already assumed that Defendant committed one meal break premium and one rest break premium violation per week. The Court will also assume that Plaintiff was not receiving all wages for each period during her employment because, at the very least, Defendant was failing to pay Plaintiff meal and rest break premiums each period."); McCollum v. TGI Friday's, Inc., No. SACV2200392FWSJDE, 2022 WL 2663870, at *8 (C.D. Cal. July 11, 2022) ("In light of these allegations the court's findings above that Defendant has reasonably assumed one meal and rest break violation per pay periods, and the lack of evidence to the contrary, the court finds it reasonable for Defendant to assume that the 26 pay periods in which a rest or meal break violation occurred resulted in the failure to pay wages owed on account of those alleged violations."). As such, Defendant's assumption of a 100% violation rate for § 210 penalties is reasonable, and Defendant has demonstrated at least $8,700 as the amount in controversy with respect to § 210 penalties.

Plaintiff also argues that the Court should eliminate the $3,323.34 component of Defendant's calculation because it is derivative of Defendant's flawed underlying wage

26-cv-02940-H-BJW

calculations. (Doc. No. 12 at 12–13.) But, even assuming Plaintiff is correct here, that still leaves $8,700 in properly supported calculations for § 210 penalties.

In sum, Defendant has demonstrated an amount in controversy of at least $8,700 with respect to § 210 violations. Indeed, Plaintiff includes $8,700 for § 210 penalties in his proffered amount in controversy counter-calculation. (See Doc. No. 12 at 19; Doc. No. 18 at 7, 10.)

D.    Wage Statement Penalties

In the complaint, Plaintiff alleges that Defendant violated the record keeping provisions of California Labor Code § 226(a) by willfully failing to provide Plaintiff with complete and accurate wage statements. (Doc No. 1-2, Compl. ¶¶ 44, 97–98.) Plaintiff further alleges: "Plaintiff and the other class members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a) or an aggregate penalty not exceeding $4,000 per employee." (Id. ¶ 101.)

Based on these allegations, Defendant calculates an amount in controversy with respect to failure to provide accurate wage statements of $4,000 (the statutory maximum under California Labor Code § 226(e)). (Doc. No. 1, Notice of Removal ¶ 68.) Defendant supports this calculation with evidence showing that Plaintiff was employed for 44 weekly pay periods during the applicable one-year statute of limitations. (See Doc. No. 1-3, Tandon Decl. ¶ 16.) Defendant further explains: "for the purpose of calculating the amount in controversy, Defendant reasonably assumes one violation per week based on Plaintiff's allegations regarding inaccurate wage statements. This yields a penalty of $50 for the initial violation and $100 for each subsequent violation," which is sufficient to reach the $4,000 statutory cap under California Labor Code 226(e). (Doc. No. 1, Notice of Removal ¶ 66.)

Plaintiff argues that the Court should reject Defendant's accurate wage statement penalties calculation because the calculation assumes a 100% violation rate. (Doc. No. 12 at 13–14; Doc. No. 18 at 7.) Plaintiff contends that it is improper to assume a 100%

26-cv-02940-H-BJW

violation when a plaintiff has only alleged a pattern and practice of violations.  (See id.) But the problem with this argument is that, unlike for Plaintiff's allegations as to other wage and hour violations, in the complaint, Plaintiff does not alleged a "pattern and practice" of accurate wage statement violations.  Rather, in the complaint, Plaintiff broadly alleges: "During the relevant time period, Defendants failed to provide complete or accurate wage statements to Plaintiff and the other class members." (Doc. No. 1-2, Compl. ¶ 44.)  Based on these broad allegations, it is proper for Defendant to assume a 100% violation rate in its amount in controversy calculation.  See, e.g., Leander, 2025 WL 301294, at *8 (finding reasonable assumption of 100% violation rate for wage statement penalties); McCollum, 2022 WL 2663870, at *6 (same).

In sum, Defendant has demonstrated $4,000 as the amount in controversy with respect to wage statement penalties.  Indeed, Plaintiff includes $4,000 for wage statement penalties in his proffered amount in controversy counter-calculation.  (See Doc. No. 12 at 19.)

> E.     Attorney's Fees

In the complaint, Plaintiff requests an award of reasonable attorneys' fees, including an award of attorney's fees pursuant to California Labor Code § 1194.  (Doc. No. 1-2, Compl., Prayer for Relief ¶¶ 8, 15, 27, 51, 56.)  In light of this request for attorneys' fees, in the notice of removal, Defendant applied a 25% benchmark in order to estimate the amount of attorney's fees in controversy, resulting in a total attorneys' fee estimate of $19,178.43.  (Doc. No. 1, Notice of Removal.)

Plaintiff argues that it was improper for Defendant to apply a 25% benchmark because the 25% benchmark is inapplicable to Plaintiff's claims here. (Doc. No. 12 at 16.) Plaintiff explains that where a plaintiff seeks attorneys' fees pursuant to a fee shifting statute, the estimate of attorneys' fees for the purpose of calculating attorneys' fees should be performed in the same manner as it would be calculated under the relevant fee shifting statute.  (Id. (citing Lopez v. Advanced Drainage Systems, Inc., 777 F. Supp. 3d 1100, 1109 (N.D. Cal. 2025).)  Plaintiff further explains that, in California, for fee-shifting

26-cv-02940-H-BJW

statutes like California Labor Code § 1194, courts use the lodestar method to calculate attorneys' fees – not a percentage of recovery. (Id. (citing Gurzenski v. Delta Air Lines, Inc., No. 2:21-cv-05959-AB (JEMx), 2021 WL 5299240, at *5 (C.D. Cal. Nov. 12, 2021)).) In response to this contention by Plaintiff, Defendant provides the Court with evidence showing what a proper lodestar estimate would be for this case based on Plaintiff's counsel's judicially approved rates, and Defendant estimates at least $30,000 in attorneys' fees under the lodestar method. (See Doc. No. 13 at 1 n.1, 19–22.)

"[W]here an underlying statute authorizes an award of attorney's fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998). "In California, attorneys' fees recoverable pursuant to a fee-shifting statute are calculated using the lodestar method, in which counsel's lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Lopez, 777 F. Supp. 3d at 1109 (citing Ketchum v. Moses, 24 Cal. 4th 1122, 1132 (2001)). As such, the court will use the lodestar method to calculate a reasonable estimate of the attorneys' fees for the amount in controversy.

California district courts routinely find 100 hours of time expended to be a reasonable estimate in individual wage and hour cases. See Ott v. Cooper Interconnect, Inc., No. 2:23-CV-04501-SPG-JC, 2023 WL 5530028, at *4 (C.D. Cal. Aug. 25, 2023) ("[C]ourts in this circuit have often found 100 hours to be a reasonable estimate in wage and hour cases."); Swans v. Fieldworks, LLC, No. 222CV07250SPGMRW, 2023 WL 196918, at *3 (C.D. Cal. Jan. 17, 2023) ("'[A]n attorney handling an individual wage-and-hour case "typically spends far more than 100 hours on the case."'"); see, e.g., Garcia v. Commonwealth Fin. Network, No. 20-CV-1483-BAS-LL, 2020 WL 6886267, at *9 (S.D. Cal. Nov. 24, 2020). In addition, Defendant has provided the Court with judicially noticeable court filings showing that Plaintiff's law firm has stated in other wage and hour cases that rates of between $575 and $1,495 per hour are reasonable for wage and hour

26-cv-02940-H-BJW

class counsel of their experience and level.[2]  (See Doc. No. 13-1, RJN at 58–59; see also id. at 73–74 (stating that a blended rate of $850/hour is reasonable for work performed by Plaintiff's law firm.)  If the Court takes just the low end of this rate range ($575 per hour) and multiplies that number by a reasonable estimate of 100 hours, the resulting attorney's fees calculation under the lodestar method is $57,500.[3]  See, e.g., Swans, 2023 WL 196918, at *3 (finding $60,000 to be a reasonable estimate of attorney's fees in an individual wage and hour case).  As such, Defendant has demonstrated an amount in controversy of at least $57,500 in attorney's fees.

E.   Conclusion

The above calculations combine to demonstrate an amount in controversy of at least $85,295.20.[4]  As such, Defendant has satisfied its burden of demonstrating an amount in controversy of greater than $75,000, and Defendant has demonstrated that the Court has diversity jurisdiction under 28 U.S.C. § 1332(a) over all of Plaintiff's claims in this action.

///

///

---

[2]   A district court may take judicial notice of court filings.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

[3]   The Court notes that if it were to take the blended rate of $850/hour proffered by Plaintiff's law firm in a different litigation and multiply that rate by 100 hours, it would result in an attorneys' fee calculation of $85,000, which is sufficient by itself to satisfy the greater than $75,000 amount in controversy requirement.

[4]   In the notice of removal, Defendant's amount in controversy calculation also included calculations of: (1) $6,600 in unpaid minimum wages; (2) $7,454.40 for failure to pay all earned wages at time of separation; (3) $500 for failure to keep requisite payroll records penalties; and (4) $3,840 in unreimbursed business expenses.  Because Defendant has adequately demonstrated an amount in controversy greater than $75,000 based on the above calculation set forth in this order, the Court declines to address whether these additional calculations are proper.  Nevertheless, the Court notes that Plaintiff's proffered amount in controversy counter-calculation contained in his reply brief includes: (1) $3,300 in unpaid minimum wages; (2) $2,484 in waiting time penalties; (3) $500 for failure to keep requisite payroll records penalties; and (4) $1,920 in unreimbursed business expenses. (See Doc. No. 18 at 10.)

26-cv-02940-H-BJW

## <u>Conclusion</u>

In sum, the Court has subject matter jurisdiction over all the claims in this action via diversity jurisdiction under 28 U.S.C. § 1332(a).  As such, Defendants' removal of this action to federal court was proper, and the Court denies Plaintiff's motion to remand.

**IT IS SO ORDERED.**

DATED: July 7, 2026

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT